[L. A. No. 8281. In Bank.—March 13, 1928.]

W. H. MICHENER, Respondent, v. C. R. HUTTON et al., Appellants.

James, Pace, Smith & Younkin for Appellants.

Jennings & Belcher for Respondent.

THE COURT.—This is an appeal from a judgment entered upon the verdict of a jury awarding damages to the plaintiff in the sum of two thousand dollars for personal injuries alleged to have been incurred on September 28, 1922, by reason of the negligence of the defendants. At the time of his injury the plaintiff was engaged as a carpenter in the construction of a residence building in the city of Los Angeles. The defendant Hutton was the plumbing contractor for said building and the defendant Goekler was his employee. It appears that Goekler on the day preceding the accident had installed a vent pipe extending from the second floor of the building to and through the roof. This pipe was run up in sections, each one of which was bell-shaped on the upper end so that the section next above it rested in the bell-shaped top of the one next below. The testimony discloses that it is usual to pack the joints of such a vertical pipe with oakum or hemp, which is tamped into position and molten lead poured thereon, the latter serving to harden and seal the joint. Among other things, Goekler testified, and without contradiction, that he had properly packed and caulked the several joints of this pipe with the exception of the topmost joint which, though packed, had not been caulked with lead. At 4:30 P. M. on the day preceding the accident Goekler left the job, intending to return a day or two thereafter in order to, among other things, seal this topmost joint with lead. The following day, however, and while said joint remained unleaded, the plaintiff while working on the ground floor of the building was injured as a result of being struck on the shoulder by the top length of said vent pipe which had, in some manner, fallen from the floor above. Being unable, from the very nature of the accident, to account for the cause of the fall of said length of pipe the plaintiff summoned to his aid the doctrine of *res ipsa loquitur* and upon request the trial court's charge to the jury contained two instructions correctly informing the jurors upon said doctrine. The defendants upon this appeal question the propriety, rather than the correctness, of these two instructions, contending that this is not a proper case for the application of the doctrine of *res ipsa*

*loquitur.* It is further urged that without the aid of said principle the evidence is insufficient to sustain the verdict. Respondent readily concedes that the evidence is insufficient to support the verdict except through the medium of the *res ipsa loquitur* doctrine, but stoutly maintains that said doctrine is peculiarly pertinent to the facts of the instant case. In view of respondent's concession it is primarily essential that we determine the propriety of the lower court's action in instructing the jury as it did.

It is elementary that the maxim *"res ipsa loquitur"* translated means simply "the thing, or affair, speaks for itself." The courts of this state have long since adopted the rule as expressed in 1 Shearman & Redfield on Negligence, sixth edition, page 132, viz.: "Where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of proper care." (*O'Connor* v. *Mennie*, 169 Cal. 217, 223 [146 Pac. 674]; *Valente* v. *Sierra Ry. Co.*, 151 Cal. 534, 538 [91 Pac. 481]; *McCurrie* v. *Southern Pac. Co.*, 122 Cal. 558, 561 [55 Pac. 324]; *Judson* v. *Giant Powder Co.*, 107 Cal. 549, 556 [48 Am. St. Rep. 146, 29 L. R. A. 718, 40 Pac. 1020]; *Dixon* v. *Pluns*, 98 Cal. 384, 388 [35 Am. St. Rep. 180, 20 L. R. A. 698, 33 Pac. 268].) Of course, to justify the application of this doctrine in any case the circumstances of the accident must be such as, unexplained, afford reasonable evidence of want of care in a respect for which the defendant is liable in the particular action. Examination of the authorities discloses that said rule has found application in many actions instituted against carriers of passengers for injuries incurred from the operation of a car. (*McCurrie* v. *Southern Pac. Co.*, *supra;* *Osgood* v. *Los Angeles Traction Co.*, 137 Cal. 280 [92 Am. St. Rep. 171, 70 Pac. 169]; *Housel* v. *Pacific Elec. Ry. Co.*, 167 Cal. 245 [Ann. Cas. 1915C, 665, 51 L. R. A. (N. S.) 1105, 139 Pac. 73].) It has been called into play in actions for injuries sustained by the running away of a horse. (*Breidenbach* v. *McCormick Co.*, 20 Cal. App. 184 [128 Pac. 423], and authorities there cited.) The same is true of

actions founded upon the explosion of a boiler (*Posey* v. *Scoville,* 10 Fed. 140) or of a powder-mill (*Judson* v. *Giant Powder Co., supra*). The doctrine has also found frequent application in actions for damages for injuries incurred by reason of being struck by falling objects. In *Dixon* v. *Pluns, supra,* the dropping of a mechanic's tool upon the head of a passer-by was held sufficient to warrant the application of said principle. In the case of *Mullen* v. *St. John,* 57 N. Y. 567 [15 Am. Rep. 530], the falling of a wall of a building was held to give rise to an inference of negligence. And negligence was inferred from the falling of a box of goods in *Lyons* v. *Rosenthal,* 11 Hun (N. Y.), 46. The case of *Kearney* v. *London & B. Ry. Co.,* 6 Q. B. (L. R.) 759, 762, applied the doctrine where the plaintiff had been injured by the falling of a brick from the defendant's bridge. In *Hogan* v. *Manhattan Ry. Co.,* 149 N. Y. 23 [43 N. E. 403], the plaintiff's injury was inflicted by the falling of a bar of iron from the defendant's elevated railway. It was held that the maxim was applicable. The case of *Sheridan* v. *Foley,* 58 N. J. L. 230 [33 Atl. 484], presented facts very similar to those here developed, it appearing that the plaintiff therein while employed in laying a sewer in a building was injured by the falling of a brick, either from a scaffold on which the defendant's employees were engaged in doing the mason work upon said building or from a hod of one of defendant's employees. It is there declared: "While it is true, as a general principle, that mere proof of the occurrence of an accident raises no presumption of negligence, yet there is a class of cases where this principle does not govern—cases where the accident is such as, in the ordinary course of things, would not have happened if proper care had been used. In such cases the maxim, '*res ipsa loquitur*,' is held to apply, and it is presumed, in the absence of explanation by the defendant, that the accident arose from want of reasonable care. . . . The facts in the present case bring it within the application of this principle. The bricks were in the custody of the defendant's servants at the time when this one fell, and it was their duty to so handle them as not to endanger others, who were engaged in other work upon the same premises. This brick could not have fallen of itself, and the fact that it fell, in the absence of

explanation by the defendant, raises a presumption of negligence." Of course, this latter case is slightly distinguishable from the instant cause in that the agency there inflicting injury was in the immediate custody of the defendant's employees at the time it fell upon the plaintiff. However, we do not understand that the management contemplated by the rule above stated must be shown to have existed at the very moment of the accident. (*Breidenbach* v. *McCormick Co., supra.*) In our case the pipe, the top length of which fell upon respondent, was unquestionably under the management of the appellants at the time of the accident for, as narrated herein, Goekler had yet to caulk with lead the top joint thereof. That the maxim may be applied even when the thing causing injury was not in the immediate custody or management of the defendant or his servants is illustrated in *Travers* v. *Murray*, 87 App. Div. 552 [84 N. Y. Supp. 558], where a chimney had fallen upon and injured the plaintiff therein. For other cases applying said maxim to actions predicated upon injuries inflicted by falling objects, see 20 R. C. L. 191, section 158, and note, 113 Am. St. Rep. 986, 1010.

One who seeks to recover damages for injuries alleged to have been incurred by reason of another's negligence must establish by a preponderance of the evidence that the latter's negligence has occasioned him loss. However, where the facts are such as to give rise to an inference of negligence from the inherent nature and character of the act causing the injury, or, in other words, to give application to the principle of *res ipsa loquitur*, the burden of proceeding is shifted to the defendant and if he would escape an adverse finding he must adduce evidence to meet the plaintiff's *prima facie* case. As stated in *Valente* v. *Sierra Ry. Co., supra,* the inference of negligence which arises under some circumstances from the nature of the accident "is simply evidence in the case, having no greater or different effect than the evidence of witnesses showing negligence would have, and in no degree changes the rule as to the burden of proof, in the strict sense of that phrase—viz., the burden of producing a preponderance of evidence. That burden does not shift from side to side in the trial of a case, but constantly remains with the party having the affirm-

ative of the issue, who, in an action for damages for negligence, is the plaintiff." In *Kahn* v. *Triest-Rosenberg Cap Co.*, 139 Cal. 340, 345 [73 Pac. 164, 166], it is declared: "The negligence could have been established by direct proof of some act which, in its nature, was negligent, or it could have been established, as it was established, *prima facie*, by the mere proof of the happening of the accident and the circumstances surrounding it, from which the presumption of negligence arose. This presumption is itself evidence in the case, and it does not change the rule as to the burden of proof. It is merely the evidence by which the plaintiffs undertook to establish the fact which they were bound to prove. It still remained the law that, upon the whole evidence, the plaintiffs must have the preponderance in order to succeed." This phase of the subject is well treated in *Gleeson* v. *Virginia Midland R. R. Co.*, 140 U. S. 435, 444 [35 L. Ed. 458, 11 Sup. Ct. Rep. 859, 862, see, also, Rose's U. S. Notes], wherein it is held: "The law is that the plaintiff must show negligence in the defendant. This is done *prima facie* by showing, if the plaintiff be a passenger, that the accident occurred. If that accident was in fact the result of causes beyond the defendant's responsibility, or of the act of God, it is still none the less true that the plaintiff has made out his *prima facie* case. When he proves the occurrence of the accident, the defendant must answer that case from all the circumstances of exculpation, whether disclosed by the one party or the other. They are its matter of defense. And it is for the jury to say, in the light of all the testimony, and under the instructions of the court, whether the relation of cause and effect did exist, as claimed by the defence, between the accident and the alleged exonerating circumstances." ██ It is apparent from these latter authorities that it is for the jury, or the court when sitting without a jury, to determine from all the evidence in the case whether the defendant has successfully met and rebutted the *prima facie* case made out by the plaintiff in an action wherein the mere proof of the happening of the accident and the circumstances surrounding it give rise to an inference of negligence. That the inference of negligence created by the application of the doctrine of *res ipsa loquitur* constitutes evidence which may not be disregarded by the

jury, but is to be weighed and considered as against the evidence adduced by the defendant in rebuttal thereof, has been announced in numerous cases. The opinion in *Maryland Cas. Co.* v. *Matson Navig. Co.*, 177 Cal. 610, 613 [171 Pac. 427, 429], is suggestive of such a conclusion. It is there stated: "But conceding, without determining, that this is a proper case for the application of this principle, and that the plaintiff would have had a right to rely upon it, as affording a *prima facie* showing of negligence, still the defendants would not be prevented from avoiding its application and effect by affirmative proof that it had been in nowise negligent in docking the ship; and the trial court, sitting as a jury and hearing these proofs would be entitled to find, as it did find, that any inference which might have arisen through the application in the plaintiff's favor of the doctrine of *res ipsa loquitur*, had been overcome by the defendant's affirmative showing of due care." In the case, of *Housel* v. *Pacific Elec. Ry. Co.*, *supra*, it is declared that "The presumption that the injury was caused by the negligence of the carrier, which is raised upon the proof by the plaintiff that he was injured while being carried as a passenger, is itself a fact which the jury must consider in determining its verdict, and which, in the absence of any other evidence in reference to the negligence, necessitates a verdict in favor of the plaintiff." After stating that the mere fall of a chimney was sufficient to give rise to an inference of negligence, the opinion in *Travers* v. *Murray*, *supra*, holds that such inference "alone is enough to sustain the verdict, even in the face of the attempted explanation on the part of the defendant." In *Volkmar* v. *Manhattan Ry. Co.*, 134 N. Y. 418, 422 [30 Am. St. Rep. 678, 31 N. E. 870, 871] the plaintiff had been injured by the fall of an iron bolt from defendant's elevated railroad. The defendant, in an attempt to rebut the *prima facie* case of negligence established by proof of such fact, adduced evidence tending to show that an employee had prior to the accident faithfully discharged his duty of examining and tightening all bolts. In its decision the court declared: "But, even if this evidence was sufficient to remove the presumption, as held by the general term, the credibility of the witness would still be involved and be a question for the jury.

This witness was the defendant's track walker. It was his duty to examine the bolt which was broken. If there was any negligence for which the defendant was chargeable, it was that of this witness. He was therefore a person interested, and possibly actuated by a motive to shield himself from blame."

From what has been said herein we conclude that the maxim *"res ipsa loquitur"* is peculiarly applicable to the instant cause and that the trial court properly gave to the jury the two instructions complained of. In view of the authorities, the implied finding of the jury that the appellants had failed in their attempt to rebut the inference of negligence created by the application of said maxim cannot be said to be without support in the evidence. And this despite the uncontradicted testimony of the appellant Goekler tending to show that the top length of pipe as placed and secured by him could not have fallen upon the respondent: For, as stated in *Quock Ting* v. *United States*, 140 U. S. 417, 420 [35 L. Ed. 501, 11 Sup. Ct. Rep. 733, 734, see, also, Rose's U. S. Notes]: "Undoubtedly, as a general rule, positive testimony as to a particular fact, uncontradicted by any one, should control the decision of the court; but that rule admits of many exceptions. There may be such an inherent improbability in the statements of a witness as to induce the court or jury to disregard his evidence, even in the absence of any direct conflicting testimony. He may be contradicted by the facts he states as completely as by direct adverse testimony; and there may be so many omissions in his account of particular transactions, or of his own conduct, as to discredit his whole story. His manner, too, of testifying may give rise to doubts of his sincerity, and create the impression that he is giving a wrong coloring to material facts. All these things may properly be considered in determining the weight which should be given to his statements, although there be no adverse verbal testimony adduced."

We find no merit in the appellants' further contention that the damages awarded to the respondent were excessive and "superinduced by erroneous instructions of law." A motion for a new trial was made upon several grounds, among them being "excessive damages, appearing

to have been given under the influence of passion or prejudice.'' This motion was denied by the lower court. It is well settled that the amount of damages in a personal injury case is committed first to the sound discretion of the jury and next to the discretion of the trial judge upon a motion for new trial. (*Reneau* v. *Hirsch*, 88 Cal. App. 1 [262 Pac. 1100].) An examination of the record, including the evidence, fails to disclose anything that would suggest an abuse of such discretion. Moreover, the instructions objected to under this assignment are not vulnerable to the attack made upon them. Under no interpretation could they have been construed by the jury as warranting an award of prospective damages for probable future suffering.

For the foregoing reasons the judgment appealed from is affirmed.