[Civ. No. 6773. Second Appellate District, Division Two.—September 18, 1931.]

JULIUS SEITZMAN, Respondent, v. SRERE CORPORATION (a Corporation), Appellant; HARTFORD ACCIDENT & INDEMNITY COMPANY (a Corporation), Intervener and Respondent.

George H. Moore and M. B. Silberberg for Appellant.

George L. Greer for Intervener.

ARCHBALD, J., *pro tem.*—Plaintiff was an employee of a firm which occupied a portion of the sixth floor of a building owned by defendant. On March 21, 1927, coming into the building on his way to work, he found, as he said, the elevator doors open, and the light being dim he stepped through the doors and fell into the basement, injuring himself. His employer was insured under the Workmen's Compensation, Insurance and Safety Act by the Hartford Accident & Indemnity Company, and an award having been made by the Industrial Accident Commission of the state in favor of the employee and against said insurance carrier for the injuries thus sustained, the latter intervened in the instant action, praying that it might have a first lien on any recovery by plaintiff for the sums expended by it under said award. The case was tried before a jury, which returned a verdict in favor of plaintiff in the sum of $15,000. From the judgment entered on said verdict defendant has appealed. No brief on appeal was filed by plaintiff, but the intervener has responded to appellant's brief.

The amended complaint, and also in effect the complaint of intervener, alleges that on the day in question "the defendant so negligently and unlawfully maintained and conducted said elevator shaft and the doors thereof that said doors were permitted to be left open and said elevator way or shaft to be darkened and unguarded while the elevator car was at some point above said ground floor, and negligently failed to have said passageway or hallway and

elevator shaft properly and sufficiently lighted, in consequence whereof plaintiff, while lawfully upon said premises and properly on said ground floor in said building . . . , believing that the elevator car was there in said shaft on said ground floor in waiting and in readiness to receive passengers for carriage, and induced to so believe by the fact that said doors were standing open, as aforesaid, and believing that by entering said doors he would be stepping into the aforesaid elevator car, and it appearing to him in the uncertain and dim light of the hallway or passageway that the elevator was on said floor, he entered and passed part way through said doorway and doors, and the said elevator car not being in that portion of the shaft, but at some point above said ground floor at that time, without any fault on his part, the said plaintiff fell . . . from the ground floor of said building to the lower floor or basement thereof'', receiving the injuries of which he complained. As to who actually opened the elevator doors and failed to close them prior to the accident the evidence is silent. Plaintiff testified in substance that the elevator shaft was about twenty to thirty feet from the open entrance to the building, in a passageway about four feet wide, on the left side of which was a soft-drink stand, and that about five feet from that ''was the elevator on the left side''; that there was a chandelier about five feet from the entrance which was never lighted, ''only at night''; that ''over on the right side of the elevator they had a little bulb, and there was a staircase that would turn around to the left going up to the building. There would also be a light there''; that he arrived about 7:30 A. M. on his way to work; that it was ''rather a gloomy day . . . There was no lights whatsoever in the hallway; just a light coming from the street into that long hall''; that the elevator doors were open as he had seen them before, ''and with that confidence . . . I just walked straight in, because it was a common occurrence at times''.

■ Appellant complains of the following instruction and in particular of the language we have italicized: ''You are instructed that when a thing which causes an injury is shown to be under the management of the defendant and the situation is such that in the ordinary course of things does not happen if those who have its managament use

proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care. In applying the above doctrine to this case you are instructed that if you find that the doors of the elevator on the first floor were open when the elevator cage was not there, and that that was such a thing as does not ordinarily happen if those who have the management thereof use proper care in the management thereof it affords *prima facie* evidence of negligence, and would justify a verdict for the plaintiff if you believe from all the evidence that such negligence, if any, was the proximate cause of the accident, *unless the evidence in the case negatives that prima facie presumption and establishes by a preponderance of the evidence that it was not the result of the negligence of the defendant,* or unless you find that the plaintiff was guilty of some negligence which proximately contributed to the accident and his injuries.''

It will be seen that the allegations of negligence in the complaint are in general terms and in effect charge that the doors were open due to the negligence of defendant, and that due to the dim light plaintiff did not discover the absence of the elevator until it was too late. The proximate cause of the injury was the open doors, and the dim lighting is only material in connection with such alleged negligence as a circumstance immediately connected with the happening of the accident and on the question of contributory negligence. In the instant case the allegations of the complaint charge negligence in permitting the elevator doors to remain open without the elevator being there present, and in having the passageway dimly lighted at such time. The evidence itself leaves the question as to just how the doors were left open somewhat in doubt. It does show, however, that defendant corporation was in charge of the elevator at the time through its employee, who had taken the elevator up a few moments before the happening of the accident. It is true the latter testified on defense that he closed the doors before he ascended and that the elevator could only be operated with the shaft's doors open by using an emergency button on the elevator, which he says he did not use, yet the jury evidently did not accept his testimony; and the elevator being at the time in charge of defendant, and the accident one that in the ordinary course of things

does not happen if the management uses proper care, and plaintiff having testified that the doors were open when he approached in the dimly lit passageway,. and as they could not very well open of themselves, it would seem to be a proper case for an instruction as to the application of the rule *res ipsa loquitur;* and of course the presumption raised by the application of the instruction to the facts of the case makes a *prima facie* case of negligence (*Michener* v. *Hutton,* 203 Cal. 604 [59 A. L. R. 480, 265 Pac. 238]) on the issues raised by the complaint and answer. Defendant attempted to meet such case by introducing evidence from which the jury could have inferred that plaintiff himself, or some third person, opened the doors.

■ Appellant urges that the evidence of the defendant shows that no employee or agent of defendant could have left the doors open, and that they must have been opened by either the plaintiff or some interloper. We must admit that the cold record before us is quite persuasive, but "it is for the jury . . . to determine from all the evidence in the case whether the defendant has successfully met and rebutted the *prima facie* case made out by the plaintiff in an action wherein the mere proof of the happening of the accident and the circumstances surrounding it give rise to an inference of negligence". (*Michener* v. *Hutton, supra.*) Where there is no direct evidence before the jury as to who opened the elevator doors, the fact that the elevator was under the management and control of defendant—the occurrence being one that does not ordinarily happen—made it an ideal situation for the application of the doctrine *res ipsa loquitur* and presented a *prima facie* case of negligence, where without it it is to be doubted if the cause would have reached the jury. ■ However, the inclusion in the questioned instruction of the portion thereof italicized by us placed on defendant the burden of overcoming such *prima facie* case by a preponderance of the evidence—a burden which properly remains with plaintiff throughout the trial. It is sufficient to prevent a recovery by plaintiff if the evidence of the defendant is of equal weight in the scales of justice with that of the plaintiff, even though it does not preponderate. The language referred to, therefore, might well have been the very thing that determined the verdict returned. The fact that the court earlier in the instruc-

tions told the jury in effect ·that unless plaintiff proved by a preponderance of the evidence that defendant was guilty of negligence he could not recover could not in our opinion cure the error, as the jurors might well think that such earlier instruction applied to evidence produced before them and that it had no application to a case where the facts themselves spoke and in connection with which they were in effect told that the defendant must overcome such *prima facie* case by a *preponderance* of the evidence. An instruction to the effect that the jurors might infer negligence from the situation surrounding the accident would attract their attention rather more than the ordinary instruction, anyway, and placing the burden on the defendant to overcome such inference by a preponderance of the evidence must have had a very impressive effect. At least in our opinion it constituted prejudicial error.

We see no merit in appellant's other contentions.

Judgment reversed

Works, P. J., and Craig, J., concurred.