**QUON et al. v. NIAGARA FIRE INS. CO. OF NEW YORK et al.**

No. 12567.

United States Court of Appeals
Ninth Circuit.

June 21, 1951.

4. 7 T.C. 263, affirmed 6 Cir., 168 F.2d 994.

Denison & Dietrich, Los Angeles, Cal., and White & Condra, San Diego, Cal., for appellant.

Hindman & Davis, Los Angeles, Cal., for appellee.

Before STEPHENS and POPE, Circuit Judges, and FEE, District Judge.

JAMES ALGER FEE, District Judge.

Quon, on behalf of two associates and himself, brought action, March 1, 1948, upon seven separate policies of insurance issued by different insurance companies for property destroyed by fire May 27, 1946. Two affirmative defenses were interposed: first, that Quon burned the property and, second, that suit was not commenced within fifteen months after the loss, as required by the policy.

The action was tried by the Court without a jury. There was no evidence tendered upon the defense of incendiary origin, and the Trial Court found against defendants upon this issue. The defense that action was not commenced within fifteen months, which was pleaded in the answer, had been anticipated in the complaint by allegations that Quon was a Chinese who did not understand business or insurance transactions and that he had been led by reliance upon statements of officers of the companies to permit the time limited by the policy for commencing action to elapse. A great deal of evidence was produced in the attempt to prove the estoppel of the appellees to rely upon the limitation. The Trial Court found that the estoppel was not established, and gave judgment for defendants.

The findings of fact are epitomized below.

The policies were issued covering a building, fixtures and merchandise in El

Centro, California, in the sum of $28,-000.00, and each was in standard form prescribed by statute containing a clause requiring suit within fifteen months after loss. Quon and two other Chinese, whom he represented, were the owners of this building. Fire occurred May 27, 1946, resulting in a loss of about $70,000.00. The policies were in full force at the time of the fire. Proofs of loss were timely filed. Quon knew of the endorsement conditions and provisions of the policies. Quon had been in business in America for forty years and was familiar with business practices, including procedures relating to fire insurance and fire losses, since he had had three previous losses by fire covered by insurance, which he adjusted to conclusion, and in one instance he dealt with one Quigg. Quigg was designated, and Quon knew that Quigg was, in the instant case, the sole adjusting representative of the companies. A few days after the fire, one Williams, a practicing attorney, was presented by Quon, who notified Quigg that all negotiations relating to the loss were to be had with Williams. On August 30, 1946, Quigg, in writing, notified plaintiff, through Williams, that the respective companies did not admit any loss was suffered, did not admit or deny liability on the policies, did not waive any terms or conditions of the policies or any forfeiture. The Court found that the failure of Quon to file suit within the time required was not induced by any act, representation or conduct of the companies or any one for them, and that plaintiffs did not rely on any representations or conduct of the insurance companies or any one acting for or on their behalf that the claims would be paid and that suit was not brought within the time limited. The Court found finally that the companies had not waived the provisions of the policies as to limitation of time and that they were not estopped to set up this defense.

■ With these findings of fact, there are no questions of law. The findings of fact are accepted, since each is supported by substantial evidence, and we are convinced the Trial Judge was correct.

■ The argument of appellant is that the testimony of Quon, as to the details relied upon for estoppel, was uncontradicted. Therefore it is said this evidence must be accepted as conclusive. But the Trial Judge was entitled to consider other circumstances [1] such as the facts at the time the case eventually came on for trial. After the time limited had expired, two witnesses were dead, and one very important witness had disappeared. The plaintiff was, of course, a highly interested party.

■ In any event, it is not true that the trier of the fact is bound to find in accordance with the statement of one witness [2] or any number of witnesses which do not satisify his mind. This is a stock instruction to juries.[3] The burden of proof was on appellant. If the testimony produced lacked credibility, it was not proof even if uncontradicted.[4] The problem of proof cannot be resolved scientifically by quantitative analysis,[5] as some have suggested. The Trial Judge was the arbiter.[6] While the testimony of Quon and his witness, if believed, might have been sufficient to establish estoppel, a point which we do not decide, the findings clearly show they were not believed.

■ Appellant attempts to fabricate a question of law out of these purely factual elements. It is said the decisions of the California courts are binding upon the federal courts sitting in the state on all pertinent questions of law here involved.

1. Cf. Treat v. Treat, 170 Cal. 329, 333, 159 P. 53, 57.

2. Quock Ting v. United States, 140 U.S. 417, 420–422, 11 S.Ct. 733, 851, 35 L. Ed. 501, quoted in Michener v. Hutton, 203 Cal. 6_ ___ ___ v., 265 P. 238, 59 A.L.R. 480.

3. Nichols v. Pacific Electric R_ Co., 178 Cal. 630, 631, 174 P. 319.

4. Jenks v. Carey, 136 Cal.App. 80, 85, 28 P.2d 91.

5. Staples v. Hawthorne, 208 Cal. 578, 583, 585, 283 P. 67.

6. Walling v. General Industries Co., 330 U.S. 545, 550, 67 S.Ct. 883, 91 L.Ed. 1088.

In general, this proposition may be accepted. But the argument proceeds: the state courts in various opinions recite certain evidence which has contributed to a finding of estoppel or waiver upon the record as a whole, and, since comparable circumstances appear here, a similar result is demanded. But the judgment of fact of one court on a particular record cannot bind another court, or even the same court, to make a similar finding on a different record. The imponderables such as credibility and inferences crowd upon one judging of facts. "The existence of an estoppel is a question of fact." Parke v. Franciscus, 194 Cal. 284, 297, 228 P. 435, 441.

It is urged with great force that the solution of this cause depends upon a letter written by Quigg to Quon's attorney soon after the first investigation, and that this Court must interpret this writing irrespective of the finding of the Trial Court. This idea is claimed to stand upon two grounds. First, it is said this Court is as well able to construe a writing as is the Trial Judge. Second, it is claimed that the construction of a writing is always a question of law.

If the second point be considered, here the question was one of waiver or of estoppel, which involves among other factors the intention of the party. The writing under these circumstances must be viewed in its setting together with all the other evidence in light of the credibility accorded the witness. Here the writing is one of the collateral facts. "Although the construction of written instruments is one for the court, where the case turns upon the proper conclusions to be drawn from a series of letters, particularily of a commercial character, taken in connection with other facts and circumstances, it is one which is properly referred to a jury." Rankin v. Fidelity Insurance, Trust & Safe Deposit Co., 189 U.S. 242, 252, 253, 23 S.Ct. 553, 557, 47 L.Ed. 792. See also William & James Brown & Co. v. McGran, 14 Pet. 479, 10 L.Ed. 550, therein cited. Here the Trial Court held that there was

neither waiver nor estoppel, that there were no misrepresentations, and that Quon was not misled.

Under such circumstances, the use of the cliché that the appellate court is in as good a position as the trial judge to construe a writing is futile. The maxim is not true, as often happens with stereotyped sayings, in this situation. Here the construction entered into a finding of fact which cannot be set aside unless clearly erroneous. In attributing imperative influence to a writing, courts would be reverting to the authoritarian doctrine of medieval scholasticism. Wigmore's language made a destructive criticism of this view: " * * * it needs to be insisted, in opposition to the popular and natural view which tends to thrust itself forward at trials, that *a writing has no efficacy per se,* but only in consequence of and dependence upon other circumstances external to itself. The exhibition of a writing is often made as though it possessed some intrinsic and indefinite power of dominating the situation and quelling further dispute. But it needs rather to be remembered that a writing is, of itself alone considered, nothing,—simply nothing. It must take life and efficacy from other facts, to which it owes its birth; and these facts, as its creator, have as great a right to be known and considered as their creature has. * * * There is no magic in the writing itself. It hangs in mid-air, incapable of self-support, until some foundation of other facts has been built for it." 9 Wigmore on Evidence, 3rd Ed., 5.

The theory that there is some magic in the writing itself and that the construction of writings by an appellate court has some special sanction is applied not only in cases such as this, but to depositions, incidental documents, stipulations before the trial court and other features. None of this is valid. The problem before the court is generally one of fact, and there the findings of the trial court are binding. There are many cases where the construction of writings is a question of law.[7] But here the interpre-

7. West v. Smith, 101 U.S. 263, 270–271, 25 L.Ed. 809.

tation of this document was required in connection with many circumstances as a question of fact. There was substantial evidence to support the findings, and these are not clearly erroneous. No rule of law was violated.

The judgment is affirmed.