**NUCLEAR CORPORATION OF AMERICA, Appellee,**

v.

**Harold LANG, Appellant.**

**No. 72–1539.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 16, 1973.

Decided June 29, 1973.

Daniel D. Jewell, Norfolk, Neb., for appellant.

Peter E. Marchetti, Omaha, Neb., for appellee.

Before LAY and BRIGHT, Circuit Judges, and NICHOL,* District Judge.

NICHOL, District Judge.

Appellant, Harold Lang, appeals the decision of the United States District Court for the District of Nebraska which adjudged him negligent in allowing a Black Angus heifer to gain access to a public thoroughfare, there to collide with a truck and to cause death and property damage. Nuclear Corp. of America v. Lang, 337 F.Supp. 914 (D. Neb.1972). The District Court refused to grant appellant's motion for a new trial (unreported Memorandum decision filed August 22, 1972). We affirm that judgment.

Appellant maintains a farming operation north of Norfolk, Nebraska, on land which adjoins United States Highway No. 81 to the east. Appellant raises livestock and in particular Black Angus cattle. Shortly after midnight on the morning of September 3, 1970, after having been absent from the farm for approximately twelve hours, Appellant returned to find an overturned tractor-trailer protruding into his feedlot from the ditch. Forty-five feet south of the truck was a dead, six-hundred pound Black Angus heifer, which Appellant conceded belonged to him. Arriving on the scene a short time later, Corporal Hoeman of the Nebraska State Patrol, observed black hair and manure on the bent right front bumper and fender of the overturned truck. His examination of the adjacent highway revealed 281 feet of skidmarks at the northernmost extension of which were black hair and patches of hide.

South of the point of collision, a lane, which serves the south farmstead, enters upon the highway. Surrounding the lane are the feedyard to the north, the catchpen and the pasture to the east, and the pasture to the south. There is a gate which eliminates access to the highway from the lane, but Mr. Lang admitted that it was open the day and night

---

* Chief Judge, District of South Dakota, sitting by designation.

of the accident. There was testimony as to the existence of cattle tracks in the lane but their direction and extent were not clearly established.

Testimony relating to the sufficiency of the fences surrounding the Appellant's property was conficting. There evidently was an electric fence on the inside of a woven wire-barbed wire fence which surrounded the feedyard. Although Appellant testified that he had inspected the fences on the day before the accident, an employee of the Appellee testified that his post-accident inspection indicated deficient fencing in several places. Mr. Bisping, the Appellee's traffic manager, testified to his observance of loose and sagging wire fences and of board fences with missing planks in those sections of Appellant's fence surrounding the south lane, from which there is direct access to the highway.

The Trial Court, in two memorandum opinions, predicated liability on what the Court considered two independent and separate rationales. First, the Court concluded that the Appellant was negligent in leaving open the gate on the south lane leading to the highway when the farm was to be left unattended for a period of time, where it was reasonably foreseeable that livestock could gain access to this area of the lane. Alternatively, the Court held that the Appellant was liable by virtue of the application of the doctrine of *res ipsa loquitur*.

It is the contention of the Appellant that the logical inferences arising from the evidence are equally consistent with a finding that the heifer escaped through no negligence of the Appellant and that the circumstantial evidence, upon which liability was exclusively grounded, was therefore insufficient to support a verdict. In answer to the Court's alternative ground, Appellant challenges the invocation of *res ipsa loquitur* on the basis that the escape of an animal from an enclosure is not such a departure from the ordinary course of events as to raise an inference of negligence.

The doctrine of *res ipsa loquitur* is a circumstantial evidentiary standard by resort to which a plaintiff can meet his burden of going forward with the evidence and thus reach the trier of fact. Asher v. Coca-Cola Bottling Co., 172 Neb. 855, 112 N.W.2d 252, 255 (1961). It is applied to justify an inference of negligence from the fact that an accident occurred and from certain other facts: (1) the fact that the event is of a kind which ordinarily does not occur in the absence of someone's negligence; (2) the fact that it was caused by an agency or instrumentality within the exclusive control of the defendant; and, (3) the fact that it was not due to any voluntary action or contribution on the part of the plaintiff. W. Prosser, Law of Torts 218 (3d ed. 1964); Nownes v. Hillside Lounge, Inc., 179 Neb. 157, 137 N.W.2d 361, 362 (1965). The doctrine has a weakness, a weakness which is exhibited by the decision of the District Court in this case. It often results in the judicial segregation of *res ipsa*-type circumstantial evidence from the ordinary circumstantial evidence which is introduced to prove specific acts of negligence. It was this segregation which produced the Trial Court's alternative holding. But the two types of circumstantial evidence should be considered together, if consistent, to determine whether a plaintiff has met his burden of going forward with the evidence. As stated by Professor Prosser:

> (i)t is quite generally agreed that the introduction of some evidence which tends to show specific acts of negligence on the part of the defendant, but which does not purport to furnish full and complete explanation of the occurrence does not destroy the inferences which are consistent with the evidence, and so does not deprive the plaintiff of the benefit of res ipsa loquitur. W. Prosser, Law of Torts 236 (3d ed. 1964).

Thus, the logical inference from the fact that the accident occurred, that it is of a kind which ordinarily does not occur in

the absence of someone's negligence, that it was caused by an agency or instrumentality within the exclusive control of the defendant, that it was not due to any voluntary action or contribution on the part of the plaintiff, *combined* with the logical inferences arising from the facts tending to show specific acts and omissions of the defendant must be "of such [a] nature and so related to each other that only one conclusion can reasonably be drawn therefrom." Raff v. Farm Bureau Insurance Co., 181 Neb. 444, 149 N.W.2d 52, 56 (1967).

There is no question that the accident was caused by an instrumentality within the exclusive control of the Appellant, nor is there any question that it was not due to any voluntary action or contribution on the part of the Appellee. The question is whether the accident is of a kind which does not usually occur in the absence of someone's negligence, and if it is, whether that fact, combined with the logical inferences arising from those facts tending to show specific negligent acts or omissions of the Appellant are "of such a nature and so related to each other" that the only reasonable conclusion that can be drawn is that the accident resulted from defendant's negligence.

The Trial Court did not directly confront the question of whether this accident is of a kind which ordinarily does not occur in the absence of someone's negligence. By invoking *res ipsa loquitur*, however, the Court necessarily concluded that unattended animals do not usually escape their enclosures unless someone was negligent, a conclusion which is supported by an abundance of authority. Mercer v. Byrons, 200 F.2d 284 (1st Cir. 1952); Scanlan v. Smith, 66 Wash.2d 601, 404 P.2d 776, 778–779 (Wash.1965) (and cases cited therein); Shepard v. Smith, 74 Idaho 459, 263 P.2d 985 (1953); Bender v. Welsh, 344 Pa. 392, 25 A.2d 182 (1942); Moss v. Bonne Terre Farming & Cattle Co., 222 Mo.App. 808, 10 S.W.2d 338 (1928). Embodied within that conclusion is an expression of judicial attitude with respect to the high standard of care owed highway travellers by abutting livestock owners. Kenney v. Antonetti, 211 Cal. 336, 295 P. 341, 342 (1931). The higher the standard of care, the more compelling is the inference that someone was negligent.

In addition to inferences arising from the fact that the accident occurred, there are also facts tending to show specific negligent acts and omissions from which the accident resulted. Appellant conceded that he had left the gate to the south lane open. Mr. Bisping testified that some of the fencing surrounding the lane was defective. Both Patrolman Hoeman and Mr. Bisping saw animal tracks in that lane. This combination of circumstances could reasonably give rise to an inference that the accident resulted from either or both of two negligent omissions: (1) failing to maintain fence in a proper state of repair; (2) failing to close the gate to the south lane.

The only evidence adduced by Appellant to counteract this inference is his own self-serving testimony that he had inspected the fences the day prior to the accident, the conclusion of Mr. Lee, an attorney from Minneapolis whose qualifications as an expert in evaluating livestock fencing were never established, that his post-accident inspection of the feedlot fences revealed no place from which a six-hundred pound heifer could have escaped, the testimony of one witness who said that he had never seen escaped livestock in the vicinity of the Lang farm and the testimony of another that he had seen none on September 2, 1970. The undertaking of inspections, however, does not necessarily eliminate the inference of negligence. The defendant-bottler in *Asher, supra,* presented extensive testimony relating to repeated inspections of bottles of Coca-Cola and the impossibility that the defendant's acts or omissions caused the injury, but the Court held defendant's attempt insufficient to rebut the inference of negligence from the fact that a dead mouse was found in one of the bot-

tles. The witnesses who testified that they had never seen escaped cattle near the defendant's premises merely reinforce the conclusion that the escape of livestock is a highly unusual occurrence and does not often happen absent someone's negligence.

 Having found favor with the trier of fact, the Appellee is entitled to have the evidence viewed and considered most favorably to him and he must be accorded the benefit of reasonable inferences therefrom. Benedict v. Eppley Hotel Co., 161 Neb. 280, 73 N.W.2d 228, 230 (1955). The Trial Court concluded that the strong inference arising from the fact that an occurrence, which does not usually happen in the absence of someone's negligence, was caused by an instrumentality under the control of the Appellant and the inference arising from other facts proven by the evidence were so compelling and so related as to permit only one reasonable conclusion— that Appellant was negligent. That conclusion is supported by substantial evidence.

Affirmed.

John W. Peck, Circuit Judge, dissented and filed opinion.